THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL J. DEPKE, Defendant-Appellant.

First District (3rd Division)   No. 1—87—1451

Opinion filed July 31, 1991.

Marc W. Martin, of Chicago, for appellant.

John M. O'Malley, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Lori J. Williams, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant Michael J. Depke was convicted of delivery of a controlled substance and sentenced to serve six years in prison. On appeal, defendant argues that (1) the State improperly attempted to influence the jury with the false impression that probation was an available sentence in a Class X delivery of controlled substance case; (2) the trial court erred in *sua sponte* informing the jury that probation was not available in connection with this case; and (3) the State failed to prove him guilty beyond a reasonable doubt. We affirm.

Thomas Braglia and Gary Brotan testified on behalf of the State. In September 1983, Braglia and Brotan were employed as law enforcement officers for the Northeastern Metropolitan Drug Enforcement Group (MEG). In the course of their undercover duties, the officers assumed the aliases of Tom and Mike, respectively. The agents established a buyer/seller relationship with Robert Franklin, defendant's codefendant, who was tried separately. On September 16, 1983, Brotan and Braglia went to 7839 South Linder in Midlothian to purchase cocaine from Franklin. When the officers arrived, no one was at home. However, they found a note which read, "Mike you guys are late, give me a call. Bob."

At approximately 4 p.m. on September 20, 1983, Robert Franklin called an undercover telephone at MEG headquarters and asked to speak to Mike. Agent Braglia answered the telephone, introduced himself as Mike's friend Tom and advised Franklin that Mike was not available. Franklin asked Braglia where he and Mike were on September 16, and suggested another meeting at 7 p.m. that evening at 7839 Linder. At approximately 6:55 p.m. that evening, Brotan and Braglia went to 7839 Linder and rang the doorbell. Defendant answered the door and the agents asked for Franklin. Defendant invited the agents into the house and directed them to the kitchen, where they saw Franklin seated at the table. Franklin introduced defendant as his brother-in-law and owner of the house.

After a brief conversation, Brotan asked Franklin if he had the cocaine. Franklin responded affirmatively and motioned to defendant to get the cocaine. Defendant walked over to the kitchen cabinet, removed a clear plastic bag filled with cocaine and handed it to Braglia before returning to his seat. Franklin then informed the agents that they would receive a minimum six-year sentence if they were caught with the cocaine. Franklin asked the officers if they had ever been arrested, and when they answered no, he responded, "good, because if they were caught, most likely nothing would happen to them."

When Brotan asked Franklin how much the cocaine weighed, he sent defendant to another part of the house to retrieve a scale. Defendant returned with a triple beam scale which he gave to Brotan before resuming his seat. Brotan weighed the cocaine and determined that it weighed 48.5 grams. Brotan asked if he could purchase an additional pound of cocaine. Franklin told the agents that he did not know them well enough to sell them that much cocaine. Thereafter, in response to Brotan's request for a demonstration of the cocaine manufacturing process, Franklin declined, but described

in detail the growing and chemical processing required to produce cocaine powder. When the conversation ended, Brotan paid Franklin $3,300 for the cocaine and the two officers left defendant's residence. Two months later, defendant was arrested and charged with delivery of a controlled substance.

At trial, Richard Paulas, a forensic scientist employed by the Illinois Department of State Police, testified that he examined the substance retrieved as a result of this MEG investigation. Paulas' examination revealed the substance to be 41.6 grams of cocaine.

Defendant did not testify on his own behalf. However, defendant's sister, Christine Depke, testified that Franklin had a key to defendant's home. Following closing arguments, the jury convicted defendant of delivery of a controlled substance. Thereafter, the court sentenced him to a term of six years' imprisonment. This appeal followed.

Defendant first argues that the State impermissibly attempted to influence the jury with the false impression that probation was an available sentence in a Class X delivery of controlled substance case. We disagree.

At trial, the following testimony was adduced during the direct examination of Thomas Braglia:

"PROSECUTOR: Did Robert Franklin say anything at this point?

WITNESS: Yes, sir.

PROSECUTOR: What did he say?

WITNESS: He told myself and Agent Brotan that if we were caught with this amount of cocaine, that we would receive a minimum of six years in jail. He thought that we should be aware of that.

PROSECUTOR: What did he say next to you?

WITNESS: He indicated that he wanted to know if myself or Agent Brotan had ever been arrested or did we have any record of any type whatsoever, police record.

PROSECUTOR: Did you respond to Mr. Franklin's inquiry?

WITNESS: Yes, sir, I did.

PROSECUTOR: What did you say?

WITNESS: Told Mr. Franklin neither myself or Agent Brotan had ever been arrested by the police for any offenses whatsoever, that we were clean.

PROSECUTOR: What did Robert Franklin say at this point?

WITNESS: Mr. Franklin said that he himself had never been arrested nor had Mr. Depke, his brother-in-law been arrested. That was good because if we were caught, most likely nothing would happen to us.

DEFENSE COUNSEL: Objection, Judge, move it be stricken. Could we have a sidebar?

THE COURT: Sustained."

Later, during the cross-examination of Thomas Braglia by defense counsel, the following testimony was elicited:

"DEFENSE COUNSEL: And you guys told him that you were never arrested before, right?

WITNESS: That's correct.

DEFENSE COUNSEL: And then that is when Franklin said to you that it would be easy on you or you would get probation if you didn't have any record, is that true?

WITNESS: That's correct.

DEFENSE COUNSEL: But Mr. Franklin was wrong, wasn't he?

WITNESS: I don't know that sir.

THE COURT: The jury will take note that there is no probation in connection with this case. Proceed."

During the direct examination of Gary Brotan, the following testimony was elicited:

"PROSECUTOR: What happened then?

WITNESS: Mr. Franklin got into a conversation with us as to if we had ever been arrested before.

PROSECUTOR: What did you reply?

WITNESS: I told him that we were clean as far as our criminal record was [sic] and also that we were clean as far as carrying any weapons while we were sitting at the table.

* * *

PROSECUTOR: What if anything else did he relate?

WITNESS: He told us about the penalty. That if we had got—if we had got caught with the ounce and a half of cocaine, that we could receive six years in jail, but seeing that our record was clean, we probably would only get probation.

THE COURT: I will interject again to mention that the jury may note that probation is not a sentence in connection with this charge. Proceed."

Defendant contends that the above-quoted testimony demonstrates that the State intentionally elicited testimony which indicated that Robert Franklin told the agents that probation was an

available sentence in this matter. Defendant argues that this testimony, combined with the trial court's *sua sponte* ruling which informed the jury that probation was not an available sentence, improperly influenced the jury to either convict defendant, because the penalty of probation was only a slap on the wrist, or to believe, based on the court's instruction, that defendant possessed a prior criminal history since probation was not an available sentence in this matter.

■ Defendant's argument must fail. The record indicates that defense counsel interjected the issue of probation into the record when he asked Agent Braglia during cross-examination if it was true that Franklin told him that he would probably get probation if he was arrested. Defense counsel elicited the response which prompted the court to *sua sponte* instruct the jury that probation was not an available sentence in the present case. Therefore defendant's contention that the State intentionally elicited information in an attempt to improperly influence the jury is disingenuous and without merit.

■ Further, defendant's second argument that the combination of the elicited testimony and the judge's instruction improperly influenced the jury to convict is unconvincing. The court is obligated to use restraint in giving instructions *sua sponte*. (*People v. Garcia* (1988), 169 Ill. App. 3d 618, 622, 523 N.E.2d 992, 995.) However, a trial judge has a duty to see that justice is done, and if it appears that justice will fail because a fact has not been developed or a line of inquiry has not been pursued, the judge has a duty to intervene either by suggestions to counsel or by his own inquiry or examination of witnesses, if necessary, and so long as he does not forget his role as judge in doing so, his actions are proper. *People v. Hicks* (1989), 183 Ill. App. 3d 636, 646, 539 N.E.2d 756, 762.

In the present case, the judge was under a duty to prohibit the introduction of evidence regarding sentencing, since it was not an issue within the province of the jury. The court's *sua sponte* instruction was required due to defense counsel's cross-examination of Agent Braglia which improperly interjected the issue of probation into the case after the court had already sustained a previous defense objection to questioning on the subject of sentencing. Under these circumstances, we find no error in the trial court's *sua sponte* instruction in this matter.

■ Further, under the co-conspirator exception to the hearsay rule, the declarations of a co-conspirator are admissible against all conspirators upon an independent, *prima facie* showing of a con-

spiracy or joint venture between the declarant and one of the other defendants, if such declarations are made in furtherance of and during the pendency of the conspiracy. (*People v. Goodman* (1980), 81 Ill. 2d 278, 283, 408 N.E.2d 215, 216.) In the present case, those criteria were satisfied where defendant let the agents into his home, retrieved the cocaine from his kitchen cabinet, and obtained a scale for the agents to weigh the cocaine. In addition, defendant was present while his codefendant discussed the penalties for possession of cocaine, and the drug manufacturing process, as well as when he accepted $3,300 in cash from the agents in exchange for the cocaine. In light of this evidence, an agreement between defendant and his codefendant to sell cocaine could be inferred. We therefore conclude that, because a sufficient *prima facie* case of conspiracy was shown by independent evidence, the testimony regarding Franklin's conversation with the MEG agents was properly admitted.

Defendant finally argues that the State failed to prove him guilty of delivery of a controlled substance beyond a reasonable doubt. We disagree.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) It is the jury's duty to assess the credibility of witnesses and to weigh the evidence in determining a defendant's guilt or innocence. (*People v. Boclair* (1989), 129 Ill. 2d 458, 474, 544 N.E.2d 715, 722.) That determination is entitled to great deference and will not be set aside absent the presence of a reasonable doubt of defendant's guilt. (*People v. Boclair*, 129 Ill. 2d 458, 544 N.E.2d 715.) Further, when a challenge to the sufficiency of the evidence is presented, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d at 261.

In the present case, the evidence of defendant's guilt is overwhelming. Both MEG agents testified that defendant answered the door to his home, directed them to the kitchen where Franklin was seated, and was present during the discussion regarding the drug deal and possible future deals. In addition, defendant procured the cocaine from the kitchen cabinet, obtained a scale from another room in the house, and was present when the agents weighed the cocaine and when they paid $3,300 in cash for the drugs. In sum,

viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of delivery of more than 30 grams of a controlled substance beyond a reasonable doubt. We therefore conclude that the jury's verdict is not so unsatisfactory, unreasonable or improbable as to raise a reasonable doubt of defendant's guilt.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

CERDA, P.J., and WHITE, J., concur.